ERVIN W. HILL and COLLEEN E. HILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hill v. Commissioner
Docket No. 6010-76.
United States Tax Court
T.C. Memo 1979-103; 1979 Tax Ct. Memo LEXIS 421; 38 T.C.M. (CCH) 481; T.C.M. (RIA) 79103; March 22, 1979, Filed Joel D. Kuntz, for the petitioners. Kenneth McWade, *422 for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Amount
1972
$1,127.75
1973
1,387.96
We have been asked to decide whether certain monthly payments made by petitioners in connection with the use of a liquor license are deductible under either section 162 [1] or section 167, or whether the payments were for the purchase of such license and therefore nondeductible. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time their petition in this case was filed, Ervin W. and Colleen E. Hill, husband and wife, resided in Lewiston, Idaho. Since 1964 Ervin W. Hill (petitioner) has been active in the restaurant business, operating three different restaurants at various times. In early 1972 petitioner acquired a restaurant in Lewiston, Idaho, known as The Wrangler. At the time of petitioner's acquisition, The Wrangler served food and beverages, but was not authorized to sell liquor by *423 the drink. Shortly after his acquisition of The Wrangler, petitioner was approached by Jack Streibick (Streibick), the joint owner with Gerald D. Wilson (Wilson) of an Idaho liquor license, concerning the use of such license in connection with the operation of The Wrangler. During the course of petitioner's negotiations with Streibick, the parties discussed the possibility of forming a joint venture consisting of Streibick, Wilson, and petitioner. Under the contemplated arrangement, Streibick and Wilson would contribute their liquor license for use on The Wrangler's premises in return for a share of the bar receipts. As an alternative to a joint venture, Streibick proposed leasing the liquor license to petitioner. In either event, the parties agreed that petitioner would have the opportunity to acquire the liquor license outright at the end of 5 years for $30,000. Following their initial negotiations and as a preliminary matter, petitioner referred Streibick to his attorney, Thomas W. Feeney (Feeney), to make the arrangements necessary to consummate the deal. Thereafter, on March 9, 1972, Streibick met with Feeney and discussed the formation of a joint venture consisting *424 of himself, Wilson, and petitioner. Subsequently, petitioner informed Fefney that he was not interested in a joint venture. Rather petitioner decided to accept Streibick's alternate proposal and told Feeney that he wished to lease the liquor license from Streibick and Wilson for a payment of $500 a month for 5 years with an option to purchase the license at the end of 5 years for $30,000. [2]
After discussing the matter with the Idaho Liquor Law Enforcement Department, it was Feeney's understanding that Idaho law did not permit the leasing of liquor licenses. Therefore, to comply with petitioner's wishes and at the same time remain within the bounds of Idaho law, Feeney drafted a document entitled "Sales Agreement." Under the agreement, Streibick and Wilson were to convey their liquor license to petitioner for a minimum sum of $500 a month for 5 years. [3] At the end *425 of 5 years, petitioner was further obligated to pay Streibick and Wilson an additional sum of $30,000. In the event that petitioner breached the contract by failing to make the final payment of $30,00, the agreement limited Streibick and Wilson's remedy to a return of the license. In this regard, the agreement provided: [The] Sellers shall have no right to monetary damages against the Purchaser, excepting only upon his refusal to take all steps necessary to the end that said license be re-issued in the name of, and again become the sole property of the Sellers. After reviewing the agreement and before signing it, petitioner told Feeney that instead of a sales agreement without recourse, he desired a 5-year lease with an option to purchase. Feeney then told petitioner that the agreement, as written, was essentially the same as a lease-option contract, and that the word "sale" was used in order to comply with the state's liquor laws. [4] Thereafter, on March 23, 1972, petitioner, Streibick, and Wilson *426 signed the agreement. During the balance of 1972 and throughout 1973, petitioner paid Streibick and Wilson $4,500 and $6,000, respectively, pursuant to the agreement. In computing their taxable income for 1972 and 1973, petitioners deducted the payments as rent. In his statutory notice, respondent disallowed the claimed rental expense deductions in their entirety based on his belief that the agreement entered into between the parties constituted a sale thereby making the payments nondeductible capital expenditures. In so doing, he imputed to petitioner an interest expense deduction in accordance with section 483 in the amount of $262 and $1,047 for 1972 and 1973, respectively. OPINION At issue is whether certain payments *427 mde by petitioner in connection with the use of a liquor license are deductible under either section 162 or section 167, or whether the payments were for the purchase of such license and therefore nondeductible. In early 1972, petitioner entered into negotiations with Jack Streibick for the use in petitioner's restaurant of a liquor license owned by Streibick and another individual, Gerald D. Wilson. As a result of their negotiations, the parties agreed that petitioner could lease the liquor license from Streibick and Wilson for 5 years with an option to purchase the license at the end of such time. [5] Subsequently, petitioner was informed by his attorney that Idaho law did not permit the leasing of a liquor license. However, as a substitute for a lease-option contract, petitioner's attorney proposed a "Sales Agreement" under which Streibick and Wilson would convey their liquor license to petitioner for a minimum payment of $500 a month for 5 years. At the end of 5 years, petitioner would be obligated to make a final payment of $30,000. In the event that petitioner failed to make the final payment of $30,000, Streibick and Wilson's sole remedy for petitioner's breach would be *428 the reconveyance of the license by petitioner to them. The parties eventually agreed to this arrangement and petitioner commenced making payments to Streibick and Wilson $500of a month. The issue for decision is the deductibility of these payments. Petitioer's first contention is that the payments of $500 a month represented rent for the use of the liquor license and, as such, are deductible under section 162(a)(3). Section 162(a)(3) provides as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any *429 trade or business, including-- * * *
(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. (Emphasis added.) Therefore, the payments in question are deductible as rent only if at the time they were made petitioner had not taken title to the property, was not taking title to the property, and had no equity in the property. The written agreement under which the payments were made clearly indicates that at the time of the payments petitioner had taken title to the liquor license. Thus, it would appear that petitioner is precluded from deducting the payments as rent. In countering this, petitioner admits that under the "Sales Agreement" the payments were, in form, part of the purchase price of the license; however, he argues the facts clearly establish that in substance the agreement was a leaseoption contract and the payments were in fact rent for the use of the license. As support for his position, petitioner asserts that the parties intended to enter into a leasing arrangement and *430 that the sole purpose for structuring the transaction as a "sale" was to comply with formalistic Idaho liquor laws. He argues this latter point is evidenced by the fact that when the transaction was structured as a "sale" rather than a lease, its financial terms remained unchanged. Further, petitioner asserts the economic substance of the transactio indicates that the monthly payments were for the use of the property and that the alleged option payment of $30,000 represented a reasonable option price for a 5-year contract signed in March 1972. [6]
We agree with petitioner that substance, rather than form, is determinative of the tax effect of the instant transaction. However, for the reasons set forth below, we must agree with respondent's determination. An appeal of the decision herein would lie in the Ninth Circuit and the Court of Appeals for the Ninth Circuit through its decision in Oesterreich v. Commissioner,226 F.2d 798 (9th Cir. 1955), has enunciated a test to be used in resolving cases of this kind. In Oesterreich *431 the issue was whether the taxpayer was entitled to treat certain payments as deductible rental expenses or as nondeductible capital expenditures. Resolution of this issue depended upon whether the agreement under which the payments were made was a lease or a contract for sale. In making this latter determination, the Circuit Court stated: [The] test should not be what the parties call the transaction nor even what they may mistakenly believe to be the name of such tranaction. * * * If the parties enter into a transaction which they honestly believe to be a lease but which in actuality has all the elements of a contract of sale, it is a contract of sale and not a lease no matter what they call it nor how they treat it on their books. We must look, therefore, to the intent of the parties in terms of what they intended to happen. [226 F.2d 801, 802 (9th Cir. 1955).] Thus, we must examine the legal effect of the agreement, as written, and determine whether it represents the intent of the eparties. In early 1972, the parties entered into negotiations for the use of a liquor license in petitioner's restaurant. As a result of these negotiations, they desired a *432 leasing arrangement with an option in petitioner to purchase the license at the end of 5 years. However, it was their understanding that Idaho law did not permit the license to be leased by its owners to petitioner. Thus, to consummate the deal it was necessary to convey ownership of the license to petitioner. This was the intent of the parties and it was so reflected in their agreement. Under section 162(a)(3) the only rental which may be deducted is that "of property to which the taxpayer has not taken title or is not taking title or in which he has no equity." At the time the payments in question were made and in accord with the parties' intent, petitioner had "taken title" to the liquor license. We therefore hold that the payments are not deductible. In reaching our conclusion, we sympathize with petitioner and sincerely believe he wished to lease the license for a 5-year term. However, under the decision in Oesterreich, it matters not that petitioner honestly or mistakenly believed the "Sales Agreement" was, or had the same effect as, a lease. While not entirely clear from his brief, petitioner seems to be arguing that he held title to the license in name only, and *433 that the word "title" in section 162(a)(3) refers to an "equitable title." We disagree. In the first place, the language of section 162(a)(3) refers to the taking of title to property or the acquisition of an equity in property. Thus, a nominal title would seem sufficient to preclude the deduction. [7]
Second, even if our construction of the statute is unwarranted, we think petitioner possessed more than a mere nominal title to the license. In this regard, it may be true that the license was ladened with the terms of the agreement, including a restriction on assignment; nevertheless, the ownership of the license by petitioner enabled him to legally sell liquor in his restaurant. In our opinion, the facts show the right to sell liquor was the most significant one within the bundle of rights embodied in the ownership *434 of the license. To be sure, petitioner's primary, if not sole, reason for obtaining the license was to acquire this right. Without title to the license, this right could not exist. In view of this, it cannot be said that petitioner's title was a nominal one. Alternatively, petitioner argues, without much conviction, that the payments in question represent the cost of acquiring an asset with a useful life of 5 years; therefore, the cost of the asset represented by the monthly payments is amortizable over the 5-year period under section 167. We disagree. Depreciation or amortization of intangibles is limited to those with an ascertainable useful life. Sec. 1.167(a)-3, Income Tax Regs. In making the payments under the agreement, petitioner was purchasing the right to use the license well beyond the taxable year in question. Presumably, so long as petitioner complied with the terms of the agreement, he could continue to use the license indefinitely. [8] How long petitioner may wish to continue using the license is indeterminable. Since petitioner's payments represent the cost of acquiring the liquor license which has an indefinite useful life, no amortization of the cost is *435 permissible. Accordingly, a deduction under section 167 is not allowable. [9] See Nachman v. Commissioner,191 F.2d 934 (5th Cir. 1951). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Shortly after commencing negotiations with Streibick, petitioner met with his accountant to discuss the reasonableness of a monthly rental of $500. Using certain assumptions in his review of the transaction, petitioner's accountant concluded that monthly rental of $500 a month would not be unreasonable.↩
3. The agreement contained a provision for contingent consideration payable to Streibick and Wilson in the event that The Wrangler's annual bar receipts approached $86,000.↩
4. The fact that a "sales agreement" rather than a "lease-option" contract was used did not affect the amount and timing of the total payments to be made by petitioner. In other words, as in the case of the sales agreement, if a lease-option contract was used, petitioner would have been obligated to pay Streibick and Wilson a minimum of $500 a month as rent for 5 years with an option in petitioner after 5 years to purchase the license for $30,000.↩
5. The record contains conflicting testimony on this point. Streibick testified that he did not discuss the possibility of a lease of the license with petitioner. On the other hand, petitioner testified that Streibick, among other proposals, offered to lease the license to petitioner and that petitioner eventually accepted this offer. After viewing the demeanor of the two witnesses at the trial of this case, we believe petitioner. Throughout his testimony, we found petitioner to be an honest and forthright individual.↩
6. There is sufficient evidence in the record to support the conclusion that $30,000 was not an unreasonable option price.↩
7. In Oesterreich v. Commissioner,226 F.2d 798, 802 (9th Cir. 1955), the Court stated: It is not necessary to hold that by payment of the rental petitioner acquires an "equity", for that word is not easy to define; it is enough that the lease provides a right in the petitioners to take title to the premises for which the rental was paid.↩
8. There is no indication in the record that the State of Idaho restricts the use of a liquor license to a limited number of years. ↩
9. Of course, petitioner will be able to recover his cost at the time he disposes of the license in the form of an offset to any amount he realizes upon such disposition. Secs. 1001, 1012.↩